| | AUSA: John Neal | Telephone: (313) 226-9644 |
|---|---|---|
| AO 91 (Rev. 11/11)  Criminal Complaint | Special Agent: Jeffrey Weiland | Telephone: (816) 806-0489 |

# UNITED STATES DISTRICT COURT
### for the

Eastern District of Michigan

United States of America
   v.

Terrence Parker

Case No. 26−mj−30318

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of    February 2023 - March 2025    in the county of   Wayne   in the   Eastern   District of   Michigan  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |
| 18 U.S.C. § 666 | Federal Program Theft or Bribery |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Jeffrey Weiland, Special Agent
_____
Printed name and title

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date:    May 29, 2026   

_____
Judge's signature

City and state:  Detroit, Michigan 

David R. Grand - Magistrate Judge
_____
Printed name and title

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINTS**

I, Jeffrey Weiland, being first duly sworn, hereby depose and state as follows:

**<u>INTRODUCTION AND BACKGROUND</u>**

1.     I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been so employed since September 2007. I am currently assigned to the Public Corruption and Government Fraud squad in the Detroit Division of the FBI. As a Special Agent, I have investigated crimes including the corruption of state and local officials, arson, forced labor trafficking, racketeering, and government program fraud.

2.     This affidavit is submitted in support of criminal complaints for Michael Norman Anderson and Terrence Parker for violating 18 U.S.C. § 371 (Conspiracy) and 18 U.S.C. § 666 (Federal Program Theft or Bribery).

3.     The facts in this affidavit come from Detroit Transportation Corporation (DTC) records, bank records, telephone records, and interviews. This affidavit is intended merely to show that there is sufficient probable cause for the requested arrest warrants and does not set forth all of my knowledge about this matter.

1

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that Anderson and Parker violated 18 U.S.C. § 371 (Conspiracy), and 18 U.S.C. § 666 (Federal Program Theft or Bribery).

## PROBABLE CAUSE

### A.      The Subjects

5.      The FBI and Detroit Police Department are investigating whether Anderson, using his official position, and Parker defrauded the Detroit Transportation Corporation (DTC). Their scheme involved creating, submitting, and receiving payment on invoices for work not performed. The City of Detroit created the DTC as a component unit for the purpose of operating the Downtown People Mover. The DTC is funded primarily by the City of Detroit, but has received more than $10,000 in federal assistance during any one-year.

6.      The DTC employed Anderson from March 28, 2022, to April 25, 2025. Anderson was fired for conduct unrelated to the current criminal investigation. Anderson worked as a Strategic Sourcing and Procurement Director. As Procurement Director, Anderson reviewed proposals and helped choose vendors to perform work for the DTC. Once a vendor was selected for the job, the vendor signed a contract with the DTC. Under its contract, the vendor submitted an invoice when it completed work. Anderson signed the invoice to verify that the

work had been completed. Anderson then requested a purchase order for work completed, signed the purchase order, and forwarded it to accounting. Finally, accounting generated a check or other electronic payment for the vendor.

7.    Terrence Parker owns and operates a business called Total Care Restoration (TCR). TCR performs restoration work on homes damaged by fire, water, windstorms, or other elements. There is no indication that either Parker or anyone else with TCR has experience with, or knowledge of, information technology (IT). TCR never submitted a bid proposal to the DTC nor did TCR sign any contract with the DTC.

8.    The DTC provided investigators with files from Anderson's work computer and shared storage drives. Among the files was a February 2023 e-mail exchange between Anderson, using 0*****son@gmail.com, and an Allstate claims adjuster. Anderson submitted a mitigation proposal and an invoice to Allstate on behalf of TCR. The invoice had the same distinctive yellow bar that appeared on the invoices that TCR submitted to the DTC. The signature block on his e-mail read "Mike Anderson Jr, Total Care Restoration." The e-mail exchange began the day after the DTC issued its first check to TCR.

**B.    TCR's invoices to the DTC**

9. From about February 14, 2023, to March 11, 2025, the DTC paid $304,911.67 on 23 invoices from TCR. Twenty-two of the invoices charged for IT work. Anderson approved the invoices and Parker deposited the checks into TCR's bank account. TCR did not submit any invoices or receive any payments before Anderson was hired as Procurement Director. Likewise, TCR did not submit any invoices or receive any payments after Anderson was fired as Procurement Director.

10. On four invoices, dated between January 5, 2023, and April 5, 2023, TCR billed the DTC for monitor repairs at DTC's main control facility. Anderson signed all of the invoices. The DTC has no record of TCR performing any monitor repair work of any sort. The DTC issued four checks totaling $15,800 payable to TCR. Parker deposited the checks into TCR's bank account.

11. Anderson procured and managed IT contracts with a number of companies while he worked for the DTC. Many of TCR's invoices to the DTC described work that had in fact been contracted to three of those IT companies. Representatives from all three companies stated that they did not subcontract or assign any work to TCR.

12. At least six TCR invoices listed work that was actually contracted to Company 1. As one example (highlighting added to Company 1 invoice):

TCR Invoice

| DESCRIPTION | AMOUNT |
|---|---|
| Installation Labor - Installation of new network cable, network racks, office terminations | $6,500.00 |
| Installation Labor - Installation of new network cable, network racks wireless access points | $13,000.00 |
| Hubbell CAT6 Patch Panel 48 Port | $910.00 |
| Quest 4 Post 7ft Open Relay Rack 45u | $924.00 |
| Debris Removal | $2,400.00 |
| TOTAL NET DUE AND OWED | $23,734.00 |

Make all checks payable to TOTAL CARE RESTORATION

If you have any questions concerning this invoice, contact   Terrence Parker @ 313-585-7639

**THANK YOU FOR YOUR BUSINESS!**

DocuSigned by:

Mike Anderson

EF2BFADB032C469

Company 1 Invoice

5

| Service Request # | 1881824 |
|---|---|
| Materials | |

Billable Materials
Mohawk CAT6 Network Cable CMP UTP-Blue

Hubbell CAT6 Patch Panel 48 Port

Hubbell CAT6 Jack-Orange

Hubbell Wall Plate SG 2 Port- Office White

Hubbell Wall Plate SG 1 Port- Office White

Quest 4 Post 7ft Open Relay Rack 45U

Quest Rack Shelf 4-Post 18" to 26" Depth 1U Vented

Ubiquiti UniFi 6 Access Point

Ubiquiti UniFi Cloud Key - Gen2+

Patch Cord CAT6 1ft- Blue

Patch Cord CAT6 10ft - Blue

Miscellaneous: J-hooks, uni-strut, conduit, boxes, connectors, straps, couplers, bushings, supports, tape, velcro, etc...

Installation Labor - Tone, tag, remove old existing cable and bring up to code

Installation Labor - Installation of new network cable, network racks, office terminations and wireless access points

13.     TCR also invoiced DTC for work contracted to Company 2, as in the example below:

TCR Invoice

6

| DESCRIPTION | AMOUNT |
|---|---|
| Dell EMC PoweEdge R650 Server | $8,300.00 |
| Dual Xeon Gold 6346 16-Core processor | $1,400.00 |
| iDRAC 9 Enterprise | $3,025.00 |
| Dual Hot Plug Power Supplies | $1,200.00 |
| 16x 32GB RAM, per server | $850.00 |
| 4x 480GB SSD, per server | $1,200.00 |
| Quad Port SFP+ 10G Network interface, per server | $1,650.00 |
| BOSS cards preinstalled with VMWare ESXi version 8 | $1,450.00 |
| Debris Removal | $1,400.00 |
| **TOTAL NET DUE AND OWED** | $20,475.00 |

Make all checks payable to TOTAL CARE RESTORATION

If you have any questions concerning this invoice, contact   Terrence Parker @ 313-585-7639

## Company 2 Invoice

| 08/15/2024 | Dell EMC PowerEdge R650 Server<br>Dual Xeon Gold 6346 3.1G 16C/32T<br>IDRAC 9 Enterprise<br>Dual Hot Plug PSU<br>16 x 32GB RAM, per unit.<br>4x 480GB SSD per unit.<br>Quad Port SFP+ 10G Network Interface<br>ESXi Preinstalled, BOSS Cards VMware version 8.<br>5-year pro-support, 4-hour on-site warranty. |
|---|---|

7

14. Most of TCR's invoices contained a charge for debris removal. In my experience, debris removal is a common line item for restoration projects but not for IT work.

15. TCR invoiced the DTC $19,450 to "[r]econfigure the names of USERS, IP Address, hostname(s) of each computer, subnet mask, gateway, DNS servers, role, OS and reformat applications for [Company 2]." Company 2 stated that it had no relationship with, no transactions with, nor any knowledge of a company called Total Care Restoration.

16. The DTC contracted Company 3 to run fiber optic cable for its facility. At least three times, TCR invoiced for the scope of work covered in Company 3's contract. In one invoice, TCR specifically described "Installation Labor – Install, operate, repair and maintain certain wires, cables, conduit for [Company 3]." Company 3 stated that it did not use any subcontractors on its contract with the DTC and, specifically, never used TCR for work on any contract.

17. Another TCR invoice, dated May 3, 2024, was in Anderson's work files as an Excel spreadsheet. The file properties show that it was last modified by "Mike Anderson" on August 7, 2024. Anderson submitted the invoice to Purchasing on August 12, 2024. There is probable cause to believe Anderson copied the language and work from the invoices and proposals of contracted IT

companies in order to create TCR's invoices, and TCR did not perform the IT work described in its invoices.

18.     I have reviewed Anderson's DTC e-mail account. Vendors e-mailed Anderson an invoice after they had completed their work. Anderson's e-mail account does not have any e-mails from TCR or Parker submitting an invoice. There is probable cause to believe there are no e-mails submitting TCR's invoices because Anderson himself created the invoices. Parker received the checks on behalf of TCR and deposited them in TCR's bank account.  Given that no work was actually performed by TCR at the DTC, there is probable cause to believe that both Anderson and Parker knew that the checks payable to TCR from the DTC were fraudulent.

19.     Records I have obtained confirm that telephone number 248-797-6589 is subscribed to and used by Michael Anderson. Telephone number 313-585-7639 is subscribed to and used by Terrence Parker. The call detail records for Anderson and Parker were analyzed for the number of events between them. Events are typically generated by a voice call or text/MMS message. Call counts contained herein have undergone simplified duplication removal. Simplified duplication removal is the removal of exact duplicates, as defined as having the same source, destination, date, and time.  Call detail records show Anderson and Parker had 317

voice calls and 1395 text messages between February 14, 2023, and March 11, 2025. Anderson and Parker communicated using their cellular telephones either the day before, the day of, and/or the day after 20 of the 23 checks were issued from the DTC to TCR. Anderson and Parker also had extensive telephone contacts before and after Anderson worked for the DTC.

20. Parker deposited DTC checks into his TCR business bank account. He would then often withdraw a portion of the deposit in cash. Anderson many times deposited cash into his bank account on the day of Parker's withdrawals or within a week of Parker's withdrawals. Anderson's deposits were in different increments than Parker's withdrawals. For example, on August 16, 2024, Parker deposited a DTC check for $23,934 and he withdrew $18,000 cash. Anderson made cash deposits into his account the same day and over the next several days in the following amounts: August 16 ($1,500); August 16 ($1,300); August 19 ($1,000); August 19 ($700); and August 20 ($1,850). There is probable cause to believe that Parker paid Anderson a portion of the money from the TCR invoices.

## CONCLUSION

21. Based on the facts set forth in this affidavit, there is probable cause to believe that Anderson and Parker violated 18 U.S.C. § 371 (Conspiracy), and 18 U.S.C. § 666 (Federal Program Theft or Bribery).

10

Respectfully submitted,

Jeffrey Weiland, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my
presence and/or by reliable electronic means.

DAVID R. GRAND
UNITED STATES MAGISTRATE JUDGE

May 29, 2026

11